**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

THE COMMONWEALTH OF VIRGINIA and
THE VIRGINIA DEPARTMENT OF STATE
POLICE,

        Defendants.

Case No. _____

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiff submits the following Complaint against Defendants.

### INTRODUCTION

1.     From before the beginning of this Nation's existence, Virginians have provided indispensable leadership in the cause of constitutional liberty.  Indeed, Virginian James Madison is, for good reason, known as the Father of the Constitution.  Madison also drafted and proposed the Bill of Rights, which became effective on December 15, 1791, when *Virginia* became the eleventh state to ratify it.[1]

2.     The Bill of Rights ratified by Virginia over 234 years ago includes the Second Amendment, which protects the pre-existing right[2] to keep and bear arms.  In *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court held that this right is among those fundamental rights

---

[1] Thomas J.  Moyer, *The Bill of Rights-Its Origins and Its Keepers*, 75 Judicature 57, 59 (1991).  In 1791, there were fourteen states, and thus the approval of eleven states was needed to meet the three-fourths requirement for amending the Constitution.

[2] *District of Columbia v. Heller*, 554 U.S.  570, 592 (2008) ("[I]t has always been widely understood that the Second Amendment … codified a *pre-existing* right.") (emphasis in original).

necessary to our system of ordered liberty and incorporated it under the Fourteenth Amendment, thereby making it applicable to the states. *Id*. at 778.

3.      Thanks to the leadership of those early Virginians, the Second Amendment protects the right of law-abiding Americans to possess and use weapons that are in common use for lawful purposes. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 21 (2022); *District of Columbia v. Heller*, 554 U.S. 570, 625-27 (2008).

4.      Virginians can be justly proud of their centuries-long tradition of leadership in the cause of liberty.  Sadly, however, that tradition was recently besmirched by the Virginia legislature's enactment of SB749, a statute that infringes law-abiding Virginians' fundamental right to keep and bear arms and thus violates the Second Amendment.  Two weeks ago, the Supreme Court noted that in a case such as this where "the government crosses the line from permissible regulation into unconstitutional infringement, courts have a duty to say so . . . no less in the Second Amendment context than in any other." *United States v. Hemani*, 608 U.S. ___, slip op. 4 (2026).

5.      SB749 bans the purchase and sale of "assault firearms."  The law thus uses politically charged rhetoric to describe the arms to which it applies.  The term "assault firearm" is not a technical term used in the firearms industry.  Rather, the term "assault weapon" (and derivatives of that term) is a rhetorically charged political term developed by anti-gun publicists. *See Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting) (quoting Bruce H. Kobayashi & Joseph E. Olsen, *In Re 101 California Street: A Legal and Economic Analysis of Strict Liability for the Manufacture and Sale of "Assault Weapons,"* 8 Stan. L. & Pol'y Rev., Winter 1997 41, 43) ("Prior to 1989, the term assault weapon did not exist in the lexicon of firearms.  It is a political term, developed by anti-gun publicists to expand the category of assault

rifles so as to allow an attack on as many additional firearms as possible on the basis of undefined evil appearance." (internal quotation marks omitted)).  In the real world (as opposed to the fevered imaginations of some politicians), the rifles that the statute calls "assault firearms" include ordinary semiautomatic rifles lawfully possessed and used by millions of law-abiding Americans.

6.      Last year, Justice Kavanaugh noted that the Court should soon take up a challenge to a law like SB749.  He stated that "[a]dditional petitions for certiorari will likely be before th[e] Court shortly and . . . th[e] Court should and presumably will address the AR–15 issue soon, in the next Term or two." *Snope v. Brown*, 145 S. Ct. 1534 (2025) (Kavanaugh, J., statement respecting denial of certiorari).  Justice Thomas agreed because the right to keep and bear "the most popular rifle in America" is of "critical importance to tens of millions of law-abiding" citizens.  *See Snope*, 145 S. Ct. at 1535, 1538 (Thomas, J., dissenting from denial of certiorari).

7.      In summary, SB749 infringes the right of law-abiding Virginians to purchase and sell AR-15 style rifles and therefore violates the Second Amendment.  Thus, Defendants have acted and will continue to act in blatant disregard of the constitutional rights of the citizens of Virginia.

8.      Plaintiffs acknowledge contrary Fourth Circuit precedent.  *See Bianchi v. Brown*, 111 F.4th 438, 446 (4th Cir. 2024), cert. denied sub nom. *Snope v. Brown*, 145 S. Ct. 1534 (2025).  But that case was wrongly decided, and Plaintiff brings this action seeking to have *Bianchi* overturned.  *See Bianchi*, 111 F.4th 483–84 (Richardson, J., dissenting) (noting that the *Bianchi* plaintiffs acknowledged that the relief they sought was foreclosed by *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017) (en banc), which they were seeking to have overturned).  Like the *Bianchi* plaintiffs, the United States has non-frivolous grounds for believing that *Bianchi* itself was wrongly decided.  *See Snope*, 145 S. Ct. at 1534 (Kavanaugh, J., statement respecting denial of

certiorari) (there is a "strong argument" that *Bianchi* was wrongly decided); and *Snope*, 145 S. Ct. at 1535-39 (Thomas, J., dissenting from denial of certiorari) (arguing that *Bianchi* was wrongly decided).

## PARTIES

9.      Plaintiff is the United States of America.

10.     Defendant, the Commonwealth of Virginia, is a state within the United States of America.

11.     Defendant, the Virginia Department of State Police (the "State Police") is an agency of Virginia.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

13.     The Court has authority to grant the remedies Plaintiff seeks pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601.  And the United States is authorized to initiate this action against Defendants under that Act.

14.     The declaratory and injunctive relief that the United States seeks is authorized by 34 U.S.C. § 12601(b) and 28 U.S.C. §§ 2201 and 2202.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred therein.

## GENERAL ALLEGATIONS

A.      **The Virginia Statute**

16.     Generally, any person who imports, sells, manufactures, purchases, or transfers an "assault firearm" in Virginia is guilty of a Class 1 misdemeanor.  Va. Code Ann. § 18.2-287.4:1.B.

4

17.    Moreover, pursuant to Va. Code Ann. § 18.2-308.2:5.E., no person may sell an "assault firearm" for money, goods, services, or anything else of value, and any person who willfully and intentionally (i) sells an assault firearm to another person or (ii) purchases an assault firearm from another person is guilty of a Class 1 misdemeanor.

18.    The definition of "assault firearm" in Va. Code Ann. § 18.2-308.2:2 includes AR-15 style rifles.

19.    In summary, the Virginia legislature has banned the importation, sale, manufacture, purchase, and transfer of AR-15 style rifles.

**B.    Standard of Review**

20.    In *Bruen*, the Court set forth the following test for evaluating Second Amendment claims:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24.

21.    Under step one of the *Bruen* test, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. Another way of saying this is that a law that restricts conduct covered by the plain text of the Second Amendment is presumptively unconstitutional.

22.    At step two, the government—i.e., the Defendants, here—has an opportunity to rebut any presumption of unconstitutionality that arose under step one by demonstrating that its regulation is consistent with the Nation's historical tradition of firearm regulation. "Only then

may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*.

23.     Thus, "when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to justify its regulation." *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (internal citation and quotation marks omitted).

**C.     The Virginia Statute Is Presumptively Unconstitutional under *Bruen* Step One**

24.     The United States has carried its burden at *Bruen* step one. The Virginia statute makes it a crime to buy and sell AR-15 rifles. "Common sense dictates that the right to bear arms requires a right to acquire arms, just as the right to free press necessarily includes the right to acquire a printing press, or the right to freely practice religion necessarily rests on a right to acquire a sacred text." *Ortega v. Grisham*, 148 F.4th 1134, 1143 (10th Cir. 2025). Moreover, in *Bruen*, the Court cited with approval the Third Circuit's decision in *Drummond v. Robinson Twp*., 9 F.4th 217 (3rd Cir. 2021). *Id*., 597 U.S. at 30. In *Drummond*, the court held that laws "prohibiting the commercial sale of firearms would be untenable in light of *Heller*." *Id*., 9 F.4th at 227 (internal citation and quotation marks omitted).

25.     In summary, the Second Amendment's plain text covers the conduct of those law-abiding Virginians who desire to buy and sell AR-15s. Therefore, the Constitution presumptively protects that conduct. Another way of saying that is the Virginia statute that bans such conduct is presumptively unconstitutional.

**D.     Tens of Millions of Law-Abiding Americans Own AR-15 Style Rifles**

26.     There is no historical tradition of banning arms in common use. Therefore, the Second Amendment protects the right of law-abiding Americans to possess and use weapons that are in common use for lawful purposes. *See Bruen*, 597 U.S. at 21; *Heller*, 554 U.S. at 625-27.

The statute bans the purchase and sale of AR-15 style rifles.  As set forth in this section, Americans own and use for lawful purposes tens of millions of AR-15 style rifles.

27.    As of 2021, there were at least twenty-eight million AR-style semiautomatic rifles in circulation.  *NSSF Releases Most Recent Firearm Production Figures*, Nat'l Shooting Sports Found.  (Jan. 11, 2024) (available at https://perma.cc/C533-T8TV).[3]

28.    Roughly 2.8 million AR-style semiautomatic rifles entered the market in 2020 alone, making up around 20% of all firearms sold that year.  Cong. Rsch. Serv., House-Passed Assault Weapons Ban of 2022 (H.R. 1808), 2 (Aug. 4, 2022); Nat'l Shooting Sports Found., Firearms Retailer Survey Report, 9 (2021) (available at https://perma.cc/ZQC3-WNHH).

29.    Various studies estimate that at least 16 million, but possibly up to 24.6 million, Americans own or have owned AR-style rifles.  *See* Emily Guskin, Aadit Tambe & Jon Gerberg, *Why Do Americans Own AR-15s?*, Wash. Post (Mar. 27, 2023), (estimating that about 16 million Americans—approximately 20% of gun owners—own AR-15-style rifles); William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned*, 33 (May 13, 2022) [https://perma.cc/9L8W-Y3HT] (estimating that 24.6 million Americans—approximately 30% of gun owners—have owned an AR-15 or similarly styled rifle); *see* also Nat'l Shooting Sports Found., *Sport Shooting Participation in the U.S. in 2020*, pg. iii (2020), [https://perma.cc/G353-9XME] (reporting that over 20 million American adults participated in target shooting with AR-15-style rifles).

30.    These rifles are widely owned for many lawful purposes.  One survey from 2021 found that the most commonly reported reasons for owning AR-style rifles are recreational target shooting (66% of respondents), home defense (61.9%), hunting (50.5%), defense outside the home

---

[3] The statistics in this section are drawn from *Bianchi*, 111 F.4th 518–19 (Richardson, J., dissenting).

(34.6%), and competitive sports shooting (32.1%).  English, *supra*, at 33–34.  Another survey conducted in 2022 found that respondents reported self-defense (65%), target shooting (60%), the potential breakdown of law and order (42%), and hunting (18%) as major reasons for owning AR-15s.  Guskin, Tambe & Gerberg, *supra*.

31.     AR-15 rifles are common for lawful purposes.  *See Bianchi*, 111 F.4th at 519 (Richardson, J., dissenting).  Indeed, for many years now, this question has been "beyond debate." *Id.*  (quoting *Kolbe v. Hogan*, 849 F.3d 114, 156 (4th Cir. 2017) (Traxler, J., dissenting)).  In *Staples v. United States*, 511 U.S. 600 (1994), the Supreme Court contrasted semiautomatic rifles like AR-15s with "machineguns, sawed-off shotguns, and artillery pieces," finding that the former are "commonplace," "generally available," and "widely accepted as lawful possessions."  *Id.* at 603, 610–12.  *See also Heller v. D.C.* ("*Heller II*") 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semiautomatic rifles . . . are indeed in 'common use . . .'"); *N.Y.  State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons . . .  at issue are 'in common use' as that term was used in *Heller*.");[4] *Friedman v. City of Highland Park*, 577 U.S. 1039 (2015) (mem.) (Thomas, J., joined by Scalia, J., dissenting from the denial of certiorari) (explaining that semiautomatic rifles like the AR-15 are commonly owned for lawful purposes); *see also Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting) ("Semi-automatic rifles have not traditionally been banned and are in common use today, and are thus protected under *Heller*."). Justice Kagan recently noted that "[t]he AR–15 is the most popular rifle in the country."  *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 297 (2025).  *See also Garland v. Cargill*, 602 U.S. 406, 429-30 (2024) (Sotomayor, J., dissenting) (AR-15s are "commonly

---

[4] The Second Circuit's holding in this respect was not disturbed by the more recent *Nat'l Ass'n for Gun Rts. v. Lamont*, 153 F.4th 213 (2d Cir. 2025).

available, semiautomatic rifles"). In 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives described AR-15 style rifles as "one of the most popular firearms in the United States," including for "civilian use." *Bianchi*, 111 F.4th at 520 (quoting *Definition of 'Frame or Receiver' and Identification of Firearms*, 87 Fed. Reg. 24652, 24652, 24655 (Apr. 26, 2022)).

32.     AR-15 type rifles are not commonly used by criminals. According to the FBI, in 2019 only 364 homicides were known to have been committed with *rifles of any type*, compared to 6,368 with handguns, 1,476 with knives or other cutting instruments, 600 with personal weapons (hands, feet, etc.) and 397 with blunt objects. *See* Fed. Bureau of Investigation, Uniform Crime Reporting Program, *Crime in the United States, 2019*, Expanded Homicide Data Table 8, https://bit.ly/3HdolNd.

33.     In summary, there cannot be the slightest question that millions of Americans have chosen to equip themselves with AR-15 style rifles, and they use those ordinary semiautomatic rifles for a variety of lawful purposes, including but not limited to self-defense.

**E.     Virginia Has Failed to Carry Its *Bruen* Step-Two Burden**

34.     Virginia cannot rebut the presumption of unconstitutionality. There is no historical tradition analogous to a ban of a weapon in common use. *See Heller*, 554 U.S. at 629. It follows that there is no historical tradition of banning the purchase and sale of a weapon in common use. A plaintiff is not required to prove common use as part of their step one showing, but if they do prove common use, they necessarily preclude the government from prevailing under step two. *See Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1209 (7th Cir. 2023) (Brennan, J., dissenting) (Proving common use is a "sufficient condition" for finding an arm is protected under the history and tradition test).

**F.**     **The United States Is Authorized to Bring this Action under 34 U.S.C. § 12601**

35.     As pertinent to this action, 34 U.S.C. § 12601(a) ("Section 12601(a)") states:

It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers … that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

36.     Virginia is a governmental authority, as that term is used in Section 12601(a).

37.     "There is hereby established as a separate department, a Department of State Police headed by the Superintendent of State Police."  Va. Code Ann. § 52-1.  "The Superintendent of State Police, his several assistants and police officers appointed by him are vested with the powers of a sheriff for the purpose of enforcing all the criminal laws of this Commonwealth . . . and it shall be the duty of the Superintendent, his several assistants and police officers appointed by him to use their best efforts to enforce the same."  Va. Code Ann. § 52-8.

38.     Pursuant to the statutes identified in the preceding paragraph, the law enforcement officers of the State Police are agents of (and are otherwise acting on behalf of) Virginia for purposes of enforcing its criminal laws, including its law making it a crime to buy and sell constitutionally protected arms.  Indeed, these statutes state that these law enforcement officers have an affirmative duty to use their best efforts to enforce that statute.

39.     When the law enforcement officers of the State Police enforce the Virginia statute that makes it a crime to buy and sell constitutionally protected arms, they are engaging in a pattern or practice of conduct by law enforcement officers.  On information and belief, the law enforcement officers of the State Police are fulfilling (and will continue to fulfill) their statutory duty to use their best efforts to enforce the provisions of Virginia law that make it a crime to buy and sell AR-15 style rifles.  Indeed, in the case of a newly enacted law such as this one, it "would

10

be unreasonable to assume that the General Assembly adopted [the law] without intending that it be enforced." *Mobil Oil Corp. v. Att'y Gen. of Com. of Va.*, 940 F.2d 73, 76 (4th Cir. 1991) (internal citations and quotation marks omitted).

40.     As set forth above, the Virginia statute that makes it a crime to buy and sell constitutionally protected arms violates the Second Amendment.  Accordingly, the pattern or practice of conduct by Virginia law enforcement officers described in the previous paragraph deprives persons of rights, privileges, or immunities secured or protected by the Constitution. Therefore, Defendants are in violation of 34 U.S.C. § 12601(a).

41.     34 U.S.C. § 12601(b) ("Section 12601(b)") states:

> Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1)[5] has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

42.     The United States brings this action pursuant to the authority set forth in Section 12601(b) to remedy Defendants' violation of Section 12601(a).

## FIRST CLAIM FOR RELIEF

43.     Plaintiff incorporates and realleges all of the allegations set forth in the previous paragraphs.

44.     Defendants have engaged in, and, on information and belief, will continue to engage in a pattern or practice of conduct by law enforcement officers that deprives persons of rights secured and protected by the Constitution in violation of 34 U.S.C. § 12601(a).

45.     Unless this Court enjoins Defendants and also grants the declaratory relief the United States is seeking, Defendants will continue to engage in the pattern or practice of conduct

---

[5] [*sic*] This should state "paragraph (a)."

described above, which pattern or practice of conduct deprives law-abiding individuals of their Second Amendment rights to acquire arms protected by the Second Amendment.

## PRAYER FOR RELIEF

WHEREFORE, the United States hereby prays that the Court grant the following relief:

A.      Entry of a declaratory judgment pursuant to 28 U.S.C. § 2201(a), declaring that:

(1)     Virginia is a "governmental authority" as that term is used in Section 12601(a);

(2)     The officers of the State Police are "law enforcement officers" as that term is used in Section 12601(a);

(3)     When the officers of the State Police enforce the provisions of the Virginia statute that makes it a crime to buy and sell AR-15 styles rifles, they are acting as agents of (or otherwise acting on behalf of) Virginia;

(4)     When the officers of the State Police enforce the provisions of the Virginia statute that makes it a crime to buy and sell AR-15 style rifles, the law enforcement officers are engaging in a pattern or practice of conduct by law enforcement officers; and

(5)     When the officers of the State Police enforce the provisions of the Virginia statute that makes it a crime to buy and sell AR-15 rifles, the effect of that conduct is to deprive the people of Virgina of their rights guaranteed by the Second Amendment.

B.      Entry of preliminary and permanent injunctive relief pursuant to Fed. R. Civ. P. 65 enjoining Defendants from enforcing the provisions of SB749 that make it illegal to buy and sell AR-15 style semiautomatic rifles.

C.      Such other and additional relief as the interests of justice may require.

12

DATED: July 1, 2026

Respectfully submitted:

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS OSETE
Principal Deputy Assistant Attorney General

R. JONAS GEISSLER
Deputy Assistant Attorney General

*/s/ Barry K. Arrington*
BARRY K. ARRINGTON (TX 24129555)
Acting Chief
Second Amendment Section

ANDREW M. COFFARELLI
(VA No. 98793)
TRISTAN SILVA II (DC No. 90037513)
Trial Attorneys
Second Amendment Section

*/s/ Brian L. Repper*
BRIAN L. REPPER (VA No. 90254)

United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530
Telephone: (202) 304-8447
E-Mail: barry.arrington@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

13